# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| OLD REPUBLIC SURETY CO., | ) | Case No. 1:24-cv-00194 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| T&A CONSTRUCTION, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Old Republic Surety Co. filed suit against Defendants T&A Construction, Inc., Nick Scordos, and Nomeke Scordos alleging breach of contract. According to the complaint, Defendants materially breached an indemnity agreement by failing to indemnify Plaintiff or respond to Plaintiff's request for financial information. (ECF No. 1.) On June 18, 2024, Plaintiff perfected service on T&A Construction, Inc. and Nick Scordos. (ECF No. 7 & ECF No. 8.) On July 17, 2024, Plaintiff perfected service on Nomeke Scordos. (ECF No. 9.) On September 3, 2024, the Clerk entered default against Defendants under Rule 55(a) of the Federal Rules of Civil Procedure. Thereafter, Plaintiff moved for default judgment under Rule 55(b)(2). (ECF No. 11.) For the reasons that follow, the Court **GRANTS** the motion, **AWARDS** Plaintiff damages in the amount of $2,016,245.73, **ENJOINS** Defendants to make their books, records, and accounts available to Plaintiff as required by the indemnity agreement, and **DISMISSES AS MOOT** Count 2 of Plaintiff's complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Upon entry of default, the Court takes well-pleaded factual allegations in the complaint as admitted, except those regarding the amount of damages. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. United States Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6).

In October 2015, T&A Construction, Nick Scordos, and Nomeke Scordos executed an indemnity agreement in favor of Old Republic as a condition for Old Republic's issuance of surety bonds on behalf of T&A. (ECF No. 1-1.) T&A Construction, Nick Scordos, and Nomeke Scordos agreed to indemnify Old Republic jointly and severally for all losses, costs, and expenses incurred by executing the bonds or "defend[ing] any action(s) against [Old Republic] arising out of the execution of any bond(s)." (*Id.*, PageID #14.) The agreement gave Old Republic an absolute right to settle claims made against the bonds and obligated the indemnitors to pay Old Republic for any liability. (*Id.*) The agreement also gave Old Republic a right to access indemnitors' financial information, including the examination and copying of their records "at reasonable times and places." (*Id.*, PageID #16.)

In August 2018, Old Republic issued a performance bond and a payment bond securing a subcontract between T&A Construction and Walsh Construction Co. (ECF No. 1-2.) Both were for $1,938,217.60. (*Id.*) T&A Construction did not complete its obligations under the subcontract, and Walsh Construction asserted a claim against the performance bond. (ECF No. 1, ¶ 18, PageID #6.) Old Republic settled the claim

for $1,938,217.60. (*Id.*, ¶ 19, PageID #6.) T&A also did not make payments related to labor and materials. (*Id.*, ¶¶ 22, 26, 30, PageID #6, 7, 8.) As a result, the Ohio Laborers Benefits Association of Trusts, Cloverdale Equipment Co., and The Chas E. Phillips Co. each asserted claims against the payment bond. (*Id.*) Old Republic settled those claims for $14,320.37, $35,424.00, and $12,808.58 respectively. (*Id.*, ¶¶ 23, 27, 31, PageID # 6, 7 & 8.) In total, Old Republic paid $2,000,770.55 to settle the four claims.

Old Republic sent demand letters to T&A Construction for indemnification after each payment but received no responses. (ECF No. 11-1, ¶ 10, PageID #68.) On October 26, 2023, Old Republic sent a letter to Defendants demanding that they grant it access to their financial records and indemnify it for $2,009,614.73, the sum of its payments plus litigation fees, investigation costs, and other expenses arising from the claims against it. (ECF No. 1-3.) Defendants did not respond. (ECF No. 1, ¶ 37, PageID #9.)

On January 31, 2024, Plaintiff filed suit against Defendants. (ECF No. 1.) Plaintiff sought (1) damages for breach of the indemnity agreement from all Defendants, (2) equitable indemnity, reimbursement, and exoneration from T&A Construction, and (3) specific performance as to financial records access from all Defendants. (*Id.*, ¶¶ 39–58, PageID #9–12.) By July 17, 2024, Plaintiff had served its complaint against all Defendants. (ECF No. 7; ECF No. 8; ECF No. 9.) Defendants did not plead or otherwise defend, and the Clerk entered their defaults on September

3

3, 2024. On October 2, 2024, Plaintiff moved for default judgment on Counts 1 and 3 of the complaint. (ECF No. 11.) Defendants did not oppose or otherwise respond.

In its motion for default judgment, Plaintiff alleges that its attorneys' fees and other expenses now total $15,475.18, bringing its total loss to $2,016,245.73. (ECF No. 11-1, ¶ 14, PageID #68.) Plaintiff seeks that amount in damages and specific performance of Defendants' contractual obligation to grant access to their financial records. (ECF No. 11-2, PageID #82; ECF No. 11-3.) Additionally, Plaintiff suggests that a favorable ruling on its breach of contract claim would moot its equitable claim against T&A Construction, warranting dismissal without prejudice of Count 2. (ECF No. 11-3.)

## ANALYSIS

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After the entry of default, the party seeking relief may apply for a default judgment under Rule 55(b).

At this stage, "an allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). In other words, the Court accepts as true any well-pleaded factual allegations in the complaint that do not go to the amount of damages. A default on well-pleaded allegations may establish the defendant's liability, but the plaintiff retains the burden of establishing damages. *New London Tobacco Mkt., Inc.*

*v. Ky. Fuel Corp.*, 44 F. 4th 393, 403 (6th Cir. 2022) (citing *Antoine v. Atlas Turner, Inc.*, 66 F. 3d 105, 110 (6th Cir. 1995)). Rule 55(b)(2) permits, but does not require, the Court to conduct an evidentiary hearing if needed to effectuate judgment. On the record presented, the Court finds that a hearing will not materially advance or alter the result of the proceedings and, therefore, exercises its discretion not to hold a hearing.

I.   **Liability for Breach of Contract**

Because the Court's jurisdiction is based on diversity, substantive State law applies. *Anton v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 634 F.3d 364, 367 (6th Cir. 2011). Plaintiff brings its claims under the law of Ohio, where the parties executed the indemnity agreement. (ECF No. 1, ¶¶ 39–58, PageID #9–12; ECF No. 1-1, PageID #17–18.) The agreement itself contains a provision obligating the indemnitors to accept interpretation and enforcement under the law of Wisconsin, Old Republic's State of incorporation. (ECF No. 1-1, PageID #17.) However, the text of this provision appears to bind only the indemnitors and not the surety, who retains "the Option" to pursue litigation under Wisconsin law but has no obligation to do so. (*Id.*) Therefore, the Court applies Ohio law to this case.

Under Ohio law, indemnity agreements are valid and enforceable. Express contracts creating indemnity relationships are interpreted according to the ordinary rules of contract construction. *Cincinnati Ins. Co. v. Savarino Const. Corp.*, No. 2:08-cv-1061, 2011 WL 1068022, at *8 (S.D. Ohio Mar. 21, 2011) (citing *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 240–41, 513 N.E.2d 253 (1987)). The Court seeks to determine the parties' intent from the contractual language, taking all terms "in

their ordinary and popular sense." *Worth*, 32 Ohio St. 3d at 240. Where a contract uses "clear and precise terms" that do not create absurd results, the Court enforces the natural and evident meaning of those terms. *Id.* at 241 (quoting *Lawler v. Burt*, 7 Ohio St. 340, 350 (1857)).

To establish that Defendants have breached the indemnity agreement, Plaintiff must show (1) "the existence of a binding contract or agreement," (2) that "the nonbreaching party performed its contractual obligations," (3) that "the other party failed to fulfill its contractual obligations without legal excuse," and (4) that "the nonbreaching party suffered damages as a result of the breach." *Spectrum Benefit Options, Inc. v. Medical Mut. of Ohio*, 2007-Ohio-5562, ¶ 25 (Ohio Ct. App. 2007).

Plaintiff's factual allegations, taken as true, support the conclusion that there was a binding indemnification agreement between the parties, that it performed its contractual obligations by issuing the surety bonds, that Defendants materially breached their contractual obligations by failing to indemnify Plaintiff or grant Plaintiff access to their financial records, and that Plaintiff suffered damages as a result of the breach because it has not recouped the costs of its settlements. Defendants have not supplied any legal excuse for their breach, nor is any such excuse discernible from the record. Therefore, the Court finds Defendants liable for material breach of their indemnity agreement with Plaintiff.

## II. Damages

Entry of default "do[es] not establish damages." *New London*, 44 F.4th at 403. Instead, the Court must independently determine the appropriate amount of

damages. Rule 55(b)(2)(B) permits the Court to conduct an evidentiary hearing to support that determination, but the Court is not required to conduct a hearing if damages can be calculated on the basis of the record before it. *See Antoine*, 66 F.3d at 111.

"Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 144, 684 N.E.2d 1261 (1996). Plaintiff seeks compensatory damages, which seek to place the injured party in the same position that it would have been in but for the breach. *See id*. Plaintiff argues that it is entitled to an award of $2,016,245.73, the sum of its settlement payments and "attorneys' fees and other expenses totaling $15,475.18," which it would have received in indemnification but for Defendants' breach. (ECF No. 11-1, ¶ 14, PageID #68.) For the reasons that follow, the Court finds that there is sufficient evidence in the record to support damages in this amount.

### II.A. Settlement Payments

In total across the four settlements, Plaintiff paid $2,000,770.55. Under the terms of the indemnification agreement, Defendants should have paid Plaintiff that amount because Plaintiff incurred those losses as a consequence of executing the surety bonds. To restore the benefit of the bargain to Plaintiff, an award of at least $2,000,770.55 in damages is appropriate.

### II.B. Additional Fees and Expenses

As Plaintiff notes, Ohio courts hold that "an indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and

7

is not contrary to Ohio's public policy." *Worth*, 32 Ohio St. 3d at 242; *see also Worth v. Huntington Bancshares, Inc.*, 43 Ohio St. 3d 192, 199–200, 540 N.E.2d 249 (1989). However, Plaintiff fails to explain or support its calculation of "attorneys' fees and other expenses." (*See* ECF No. 11-1, ¶ 14, PageID #68.) The fact that *some* award is appropriate does not obviate Plaintiff's responsibility to demonstrate how it arrived at its specific figure or to substantiate the amount claimed.

In its motion for default judgment, Plaintiff includes an affidavit from its assistant vice president of claims attesting that, "[i]n addition to the Settlement Payments, Old Republic has paid attorneys' fees and other expenses totaling $15,475.18 by reason of executing the Bonds." (ECF No. 11-1, ¶ 14, PageID #68.) Ordinarily, such a bare assertion without proper substantiation would not support an award of fees or costs. In the present procedural posture, however, and based on its experience, the Court has not reason to question the declaration and finds that this amount is reasonable.

### III. Injunctive Relief

Finally, Plaintiff requests injunctive relief in the form of specific performance compelling Defendants to make their books, records, and accounts available to Plaintiff for examination and copying. (ECF No. 1, PageID #13; ECF No. 11, PageID #82.) Section III.L of the indemnity agreement requires Defendants to "furnish to [Plaintiff] such information as it may request concerning the financial condition of [Defendants]" and entitles Plaintiff to, "at reasonable times and places[,] examine and copy the books, records, and accounts of [Defendants]." (ECF No. 1-1, PageID #16.) In its October 26, 2023 letter, Plaintiff invoked this inspection right. (ECF

8

No. 1-3, PageID #25.) Defendants have not complied with Plaintiff's request or otherwise responded.

Whether specific performance provides an appropriate remedy is "a legal conclusion, not a factual determination." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577. 584 (6th Cir. 2007). Under Ohio law, a court should not order specific performance where a remedy at law, such as money damages, provides adequate compensation for a breach of contract. *Sorrell v. Micomonaco*, 2017-Ohio-1498, ¶ 27 (Ohio Ct. App. 2017). However, where failure to perform breaches a contract and money damages will not afford adequate relief for losses arising from the breach, specific performance provides an additional remedy. *Id.* Defendants' failure to grant Plaintiff access to their financial records constitutes a breach of the contract. Therefore, the issue turns on whether money damages afford adequate relief for that breach.

In *JPMorgan Chase*, the Sixth Circuit applied the same "inadequate remedy at law" standard under Michigan law to hold that the plaintiff was entitled to specific performance of a contractual provision granting it the right to inspect the financial records of two companies. 510 F.3d at 583–87. The court rejected the defendant's argument that the plaintiff's right to inspect was only ancillary to its right to enforce a security interest, instead determining that it was a separate right that the express terms of the contract guaranteed to the plaintiff. *Id.* at 585. Consequently, the defendant's breach of the inspection provision could not be remedied through an award of monetary damages; "the only plausible remedy for [the defendant's] failure

9

to allow inspection is to order such inspection." *Id.*; *see also International Fid. Ins. Co. v. Vimas Painting Co., Inc.*, No. 2:07-cv-00298, 2009 WL 2243769, at *9 (S.D. Ohio July 23, 2009) (ordering specific performance of indemnity agreement expressly guaranteeing "reasonable access to [d]efendants' books, records, and accounts").

The Sixth Circuit's reasoning in *JPMorgan Chase* applies to this case as well. Monetary damages are not an adequate substitute for Plaintiff's contractual right to examine and copy Defendants' books, records, and accounts. This inspection right may also aid in its enforcement and execution of judgment. Therefore, an injunction for specific performance is the appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for default judgment, **AWARDS** Plaintiff damages in the amount of $2,016,245.73, and **ENJOINS** Defendants to make their books, records, and accounts available to Plaintiff as the indemnity agreement requires. (ECF No. 11.) Further, the Court **DISMISSES AS MOOT** Count 2.

**SO ORDERED.**

Dated: October 24, 2024

J. Philip Calabrese
United States District Judge
Northern District of Ohio